No. 88-500

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

IN RE THE MARRIAGE OF
CONNIE A. DIRNBERGER,

       Petitioner and Respondent,
and

JEROME A. DIRNBERGER,

       Respondent and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Paul Neal Cooley; Skelton & Cooley, Missoula, Montana

    For Respondent:

        Paulette C. Ferguson, Missoula, Montana

---

Submitted on Briefs: March 31, 1989

Decided: May 18, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a dissolution proceeding in the Fourth Judicial District Court, Missoula County. Husband appeals. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

The issues are:

1. Did the District Court err in failing to make adequate findings of fact before dividing the marital property?

2. Did the District Court err by not awarding specific visitation rights to husband?

3. Did the District Court err in awarding attorney fees to wife?

4. Did the District Court err in certain rulings?

The parties were married January 24, 1982. Dissolution proceedings were initiated on December 12, 1986. Husband has two minor children from a prior marriage. Wife has a minor daughter whom husband adopted.

Jerome Dirnberger (husband) has a bachelor's degree in theology and has done graduate studies in anthropology. Connie Dirnberger (wife) has a high school diploma. Husband's work experience includes bank teller, bank officer, and bank manager. He has also owned and managed several businesses, including Schrader Stoves, Montana Glass, Inc., United Building Services, and Business Advisory Services. Wife has worked as a telephone operator, interior designer, and as alcohol counselor for the Confederated Salish and Kootenai Tribes. Wife is an enrolled member of these Tribes.

When the parties were married wife owned a home in East Missoula, Montana. Husband had just closed the Schrader Stoves business. Soon after marriage the parties sold the East Missoula home and moved to Denver, Colorado. The parties received approximately $2,300 in equity from the

Missoula home. During the marriage, husband received approximately $62,000 by bequest from his father. When the parties moved to Denver they purchased a home using proceeds from the home sold in Missoula, combined with money from husband's inheritance.

The parties later sold the home in Colorado and moved back to Missoula, reinvesting the proceeds from the Denver home into a home in Missoula. At dissolution the equity in the Missoula family home was valued at $13,000. The court ordered that the family home be sold and the proceeds divided equally.

The parties owned two businesses at the time of dissolution: Montana Glass, Inc., and West Pine Partnership which owns rental properties. Montana Glass, Inc. was purchased by the parties in 1985 for $404,000. The purchase price of Montana Glass, Inc. actually comprised the purchase of stock, inventory, and the West Pine Partnership. Husband contributed $40,000 to the purchase price from funds obtained by bequest from his father, and assumed a contract in the amount of $347,000. Husband's brother contributed $15,000 to the business and husband's two children each contributed $1,500. Husband and wife owned 70% of this business.

Montana Glass, Inc. was found by the court to have a net market value of $100,000. Because the parties owned 70% of the business, their interest was valued at $70,000. From this value the court deducted $44,000 which was attributable to husband's inheritance, leaving a value of $26,000 attributable to the marital estate. The court determined the net value of the West Pine Properties to be $2645. Thus the combined net value of the two businesses was $28,645. The court awarded $15,000 of this interest to wife, ordering husband to pay this at the rate of $500 per month until paid.

3

Wife was to transfer her interest in these businesses to husband.

I

Did the District Court err in failing to make adequate findings of fact before dividing the marital property?

"A District Court has far-reaching discretion in dividing the marital property. Our standard of review is that the District Court's judgment, when based upon substantial credible evidence, will not be altered unless a clear abuse of discretion is shown." In re Marriage of Stewart (1988), 45 St.Rep. 850, 852, 757 P.2d 765, 767; In re Marriage of Watson (1987), 44 Mont. 1167, 1170, 739 P.2d 951, 954.

In a marital dissolution the guidelines for property division are enumerated in § 40-4-202, MCA. This statute lists many factors to consider in this apportionment, specifically providing that the court shall consider the estate and liabilities of the parties. The basic goal is that the court must "finally equitably apportion between the parties the property and assets . . ." In construing this statute, this Court has consistently held that this apportionment must be predicated upon a finding of the net worth of the marital estate. Only after a finding of net worth can the trial court make an equitable apportionment. The District Court must make complete findings of fact, including assets and liabilities, from which can be established a net worth of the parties. Schultz v. Schultz (1980), 188 Mont. 363, 613 P.2d 1022, and cases cited therein; Cook v. Cook (1980), 188 Mont. 472, 614 P.2d 511. Additionally, "[i]f the District Court's findings and conclusions do not reflect the net worth of the parties' marital assets at the time of their divorce, this Court on appeal cannot determine if the property was equitably divided." Robertson v. Robertson (1979), 180 Mont. 226, 231, 590 P.2d 113, 116.

4

The District Court found the marital estate of the parties included the family home, Montana Glass, Inc., and the West Pine Partnership. However, the court made no specific finding as to marital debt, or as to the value of the parties' personal property. The court simply allocated the unpaid debt to husband. Husband produced evidence at trial demonstrating debts exceeding $55,000, which have been incurred by both husband and wife. The amounts and sources of these debts are uncontroverted. Husband argues that if this debt is subtracted from his share of the marital estate, he is left with a negative net value of over $35,000. In the case of In re Marriage of Metcalf, 183 Mont. 266, 598 P.2d 1140, the trial court failed to consider $12,000 worth of unsecured debt before distributing the marital property, resulting in a net deficit to one party. This Court stated, "This factor, if considered by the court, should have alerted it that the property distribution was inequitable." Metcalf, 598 P.2d at 1143. Similarly, in the present case, there is no basis for determining whether the apportionment of assets is equitable without a finding on the parties' liabilities.

We conclude that the District Court's failure to make a specific finding as to liabilities, thereby precluding a determination of net worth, was an abuse of discretion. Additionally, we note that the court's decree should include a finding regarding the parties' personal property in this case, as husband alleges that this value is substantial. "If contested evidence is presented regarding the existence of a marital asset and no findings are made regarding that asset or no explanation provided as to why the District Court did not include or explain the exclusion of such property, the District Court has abused its discretion." Hammeren v. Hammeren (1982), 201 Mont. 443, 447, 663 P.2d 1152, 1154. We vacate the property division in this case and remand for a

5

redetermination of the property division, using all relevant factors including the consideration of net worth and personal property in a manner consistent with this opinion.

Husband also contends that the court erred in not taking his inheritance into consideration in dividing the proceeds from the family home. While the court subtracted the husband's inheritance from the parties' equity in the business, it did not subtract any amount from the equity in the family home which might be attributable to inheritance. The court is required to take an inheritance into consideration in dividing the assets. However, this Court has previously stated that "no definite rule could be established as to how the trial court was to consider this asset. Each case has to be decided on its own facts." Metcalf, 598 P.2d at 1143, quoting Vivian v. Vivian (1978), 178 Mont. 341, 583 P.2d 1072. In the present case the court took husband's inheritance into consideration in the property division. We conclude that the District Court did not err in its determination that the equity in the family home should be divided equally.

## II

Did the District Court err in not awarding specific visitation to husband?

The dissolution decree awarded custody of the minor child to wife and gave husband "reasonable rights of visitation." The court also decreed that "Husband may petition the Court for a specific visitation schedule with the minor child if the granting of 'reasonable visitation' becomes unworkable." The child involved in this custody issue is wife's daughter, Sari, whom husband adopted. Sari is now 16 years old.

Husband contends that it was error for the court not to establish a specific visitation schedule because there is

6

recognized animosity between him and his wife, and because wife has previously discouraged visitation of Sari. We find no abuse of discretion in this case. Considering Sari's age, the granting of a lenient standard of "reasonable visitation" may be appropriate. The court specifically allowed husband to petition for a specific visitation schedule should the parties' visitation arrangement turn out to be unworkable. This Court has previously approved the granting of reasonable visitation, rather than a specific schedule in certain cases. See Meyer v. Meyer (1983), 204 Mont. 177, 182, 663 P.2d 328, 331; Sanderson v. Sanderson (Mont. 1981), 623 P.2d 1388, 1389, 38 St.Rep. 177, 178. We hold that the District Court did not abuse its discretion in not establishing a specific visitation schedule.

## III

Did the District Court err in awarding wife attorney fees?

Husband contends that the court abused its discretion in ordering him to pay $3,000 of wife's attorney fees and costs. He urges that the court's failure to consider the parties' liabilities indicates that it failed to consider the financial resources of the parties' before awarding attorney fees.

In a dissolution proceeding, attorney fees are awarded pursuant to § 40-4-110, MCA, which provides that "[t]he court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party . . . ."

In view of the court's failure to make findings on the parties' liabilities, it could not have properly considered the financial resources of both parties. As in In re Marriage of McGill (1980), 187 Mont. 187, 193, 609 P.2d 278, 279, rev'd on other grounds, 196 Mont. 40, 637 P.2d 1182 (1981), we believe it is best to vacate the attorney fee

7

award and leave this to the discretion of the trial court on remand. We therefore vacate the award of attorney fees and remand for further consideration.

IV

Did the District Court err in allowing certain evidence at trial?

Husband contends that the court erred in allowing wife's late filing of proposed findings of fact and conclusions of law. Wife did not file proposed findings of fact and conclusions of law until the day before trial. On the day of trial, husband requested sanctions for late filing pursuant to Rule 8, Uniform District Court Rules. The court first imposed a sanction prohibiting wife from presenting any evidence at trial. However, the court withdrew that order when wife reminded the court that it had previously agreed to allow her an extension of time to file her proposals. We note that the language of Rule 8 allows the court discretion in awarding sanctions. In the absence of any showing by the record that the District Court committed an abuse of discretion, we will not overturn the decision of the lower court.

Husband also alleges that the court erred when it retracted its order excluding wife's expert from testifying. On the first day of trial, January 22, the court excluded wife's expert, Tracy Blakeslee, a CPA who was to testify to the value of Montana Glass, Inc. This exclusion was based on the fact that wife had not supplemented interrogatories in a timely fashion to notify husband of this expert.

Relying on this order, husband declined the court's offer of a continuance and elected to try the case that day. However, at the close of the first day of trial, husband requested a continuance in order to brief a certain issue. The court granted this continuance, and because of scheduling problems, the trial was not resumed until March 16, nearly

two months later. When trial resumed on March 16, both husband's expert and wife's expert were allowed to testify as to the value of the business. Husband claims surprise, and also that the retraction of the order negated his trial tactics, in that he assumed only his expert would testify as to the value of the business.

It is not clear from the record at which point or for what reason the court retracted its order. In view of the fact that the trial was continued for nearly 2 months, we conclude no abuse of discretion has been shown on the part of the trial judge in allowing wife's expert to testify. In the event husband contends he should be allowed to submit additional evidence because of the Blakeslee testimony he may present that request to the trial court for consideration on remand.

We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9