NO.  93-241

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

JEFF M. SMITH, JR.,

      Petitioner and Appellant,

  and

LISA SMITH,

      Respondent and Respondent.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Don C. St. Peter and Linda Osorio St. Peter,
**Worden,** Thane & Haines, Missoula, Montana

      For Respondent:

        Paulette C. Ferguson and Lori Ballinger,
Attorneys at Law, Missoula, Montana

Submitted on Briefs:  March 10, 1994

Decided:  March 24, 1994

FILED

Filed:  MAR 2 4 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Petitioner/appellant, Jeff Smith, appeals from a final decree of dissolution from the Fourth Judicial District Court, Missoula County, ordering the establishment of a trust fund for the minor child and child support, reassigning custodianship of another trust account for the minor child, evaluating the marital estate, and awarding cash, monthly maintenance, and attorney fees to respondent, Lisa Smith.

We affirm in part, reverse in part, and remand for further proceedings in accordance with the provisions of this opinion.

Appellant raises the following issues on appeal:

1.    Did the District Court err when it ordered Jeff to establish a $200,000 trust account for the parties' minor child?

2.    Did the District Court err when it ordered the minor child's trust account to be set up under the joint control of petitioner and respondent?

3.    Did the District Court erroneously evaluate the marital estate?

4.    Did the District Court err when it awarded Lisa $500,000 in cash?

5.    Did the District Court err when it awarded Lisa $1250 in monthly maintenance in addition to $500,000 in cash?

6.    Did the District Court err when it awarded Lisa $1250 in monthly child support?

7.    Did the District Court abuse its discretion when it ordered Jeff to pay Lisa's attorney fees?

The parties married on June 21, 1986, at Buckingham, Virginia. It was Jeff's third marriage, and Lisa's second. Jeff is 34 years old and Lisa is 31. The parties have lived in Missoula since 1989. One child was born the issue of the marriage. The parties separated in February 1991 when the child was six months old. Lisa has provided the day-to-day care for the child. Jeff is frequently out of the Missoula area on trips, and during the separation he did not visit the child on a regular basis. Lisa testified that the reasonable monthly expenses for her and the child are approximately $2500.

Jeff is a high school graduate. He attended college, but did not receive a degree. He attended outdoorsman school and is a certified dive master, a multi-engine rated pilot, and a licensed hot rod driver. Jeff has worked in Montana as a trapper, started a video business, and has been an entrepreneur. He inherited $1,696,164 in distributions from his mother's estate, approximately $2.1 million dollars in insurance proceeds, and expects to receive approximately $6 million more from her estate.

Lisa is a high school graduate who also attended outdoorsman school and one adult education class each in art and photography. She has worked as a food preparer in a small cafe, as a farm hand on Jeff's family horse farm in Virginia, and for a short time as a trapper. She aided her husband in the beginning of a video business and in a communications business. She has been a homemaker and a full-time mother of the parties' minor child. In

addition, she was a hostess for Jeff's business clients in their home.

Jeff testified that he had intended to set up a trust fund for the child by purchasing an annuity, and that he had already researched the cost of the annuity. Also, prior to her death, Jeff's mother gifted $20,000 to the parties' minor child in the form of a check delivered to Montana, naming Jeff as the custodian of that account. Thereafter, Jeff borrowed $15,000 of the gift for his business, Underwater Fantaseas. Jeff maintained that the money had been invested, but the record does not reveal that he has protected the investment. Further, Jeff testified that he planned to sell one-half of the stock in the corporation to his companion for $1000.

## ISSUE 1

Did the District Court err when it ordered Jeff to establish a $200,000 trust account for the parties' minor child?

The District Court ordered Jeff to fund a $200,000 trust for the minor child by the purchase of an annuity. We have held that "there is an abuse of discretion where the court adopts a proposed trust that is beyond the authority of the court to order." In re Marriage of Alt (1989), 218 Mont. 327, 334-35, 708 P.2d 258, 262. In a dissolution proceeding, § 40-4-202(2), MCA, governs whether a district court may set aside a portion of the marital estate in a trust for the benefit of the parties' children. Section 40-4-202(2), MCA, provides:

> The court may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held estates of the parties in a separate fund or trust <u>for the support, maintenance, education, and general welfare of any minor</u>, dependent, or incompetent children of the parties. [Emphasis added].

Here, the court exceeded the authority granted in § 40-4-202(2), MCA, to set up a trust. The record does not establish that the trust was needed for support, maintenance, education, and general welfare of the parties' minor child until he reached majority. In fact, in addition to a $200,000 trust account, the court awarded Lisa $1250 per month in child support which, Lisa had stated, was the amount of monthly expenses necessary to support the child.

The District Court abused its discretion when it ordered Jeff to establish a $200,000 trust for the minor child, and we reverse on this issue.

## ISSUE 2

Did the District Court err when it ordered the minor child's trust account to be set up under the joint control of petitioner and respondent?

The gift to the parties' minor child from Jeff's mother was deposited by Jeff in a separate account and subsequently invested by Jeff in some of his enterprises. Apparently because there was joint custody of the parties' minor child, the court directed the account be established with both Lisa and Jeff as custodians of the fund. In the decree of dissolution, the court ordered:

> The petitioner shall immediately return the $20,000 plus interest he borrowed from the minor child. The money

5

shall be deposited in a savings account in a reputable, secure financial institution. Both parties shall be trustee for the money and the money shall not be borrowed by either party. Prior to the time the child reaches the age of majority, the money [can] be used for educational or unusual expenses for the minor child.

We conclude that this order of the court will protect the interest of the minor child. We affirm on this issue.

### ISSUE 3

Did the District Court erroneously evaluate the marital estate?

The District Court found that all assets acquired during the marriage should be included in an equitable distribution of the marital estate. The District Court failed to identify or describe the assets acquired during the marriage, or assign values to them, and failed to consider the contingent liabilities associated with those assets. We hold that this was an abuse of discretion. Marriage of Dirnberger (1989), 237 Mont. 398, 401-02, 773 P.2d 330, 332. The court also abused its discretion for failure to follow the provisions of § 40-4-202, MCA.

We reverse the District Court on this issue and remand for a determination of the value of the estate in accordance with § 40-4-202, MCA.

### ISSUE 4

Did the District Court err when it awarded Lisa $500,000 in cash?

In April 1991, several months after the parties separated, Jeff's mother died leaving him $2.1 million in life insurance proceeds and over $7.6 million in inheritances.

6

The District Court found that Jeff's prior-acquired, gifted, vested inheritance properties and property acquired during the marriage should be included in the marital estate and subject to an equitable division of assets and liabilities. The court then apportioned $500,000 to Lisa as a cash settlement.

While in a dissolution proceeding the trial court has far-reaching discretion in making a determination as to whether an asset is included in the marital estate and in making the final property division, it still must comply with the statute governing division of property. Becker v. Becker (1985), 218 Mont. 229, 232, 707 P.2d 526, 528. Section 40-4-202, MCA, controls the division of property in a proceeding for dissolution, and provides in pertinent part:

> (1) . . . the court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both . . . . In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker:
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements. [Emphasis added].

Recently, we held that an inheritance received by one spouse during the parties' separation, but before a decree of dissolution, could be included in the marital estate. Marriage of Isaak v. Smith (1993), 257 Mont. 176, 848 P.2d 1014. In Isaak, we vacated the property distribution ordered by the district court that had excluded from the marital estate some of the property devised to

7

the husband by his father's will. The father built a home for the parties on a 21-acre parcel of land. The land and home were still in the father's estate at the time of his death. The parties' marriage was dissolved over seven months after the father died while the probate on the father's estate was still open. The district court found that the father had intended a future gift of the home to the couple and included it in the marital estate. The court excluded from the marital estate the rest of the fathers' estate that the husband inherited. We held that the district court properly included the 21-acre parcel and home under § 40-4-202, MCA, but should have included all of the inheritance property in the marital estate. We reasoned that although the parties had separated several months before the father's death, at which time the husband's inheritance vested, the parties had attempted to reconcile before and after the father's death. The husband moved back into the home with the wife and the couple sought some marital counseling. We concluded that the appropriate result was that, on remand, the district court should include not only the 21-acre parcel and the home, but the other inherited property in the marital estate. However, we emphasized that the district court should be guided by all the provisions of § 40-4-202, MCA.

This case is distinguishable from Isaak in that, unlike the couple in Isaak, Jeff and Lisa had separated permanently before Jeff's inheritance had vested. Regardless, we hold that the fact that an acquiring spouse may receive an inheritance after separation but prior to dissolution of the parties' marriage does

8

not, in and of itself, justify inclusion of the inheritance in the marital estate. What is key in a separation situation is that the district court apply the factors in § 40-4-202, MCA, before including inheritance property in the marital estate. The court cannot distribute to the non-acquiring spouse property acquired prior to the marriage or acquired by gift, bequest, devise, or descent when there is no evidence that the spouse made any contribution to those assets in any form.

Therefore, we overrule that portion of Isaak that allows a district court to distribute inheritance property in the marital estate without strict application of the factors set out in § 40-4-202, MCA.

It is clear from the record here that Lisa had nothing to do with the property to which Jeff became entitled after the separation. The District Court should not have distributed in the marital estate properties that Jeff received after the parties separated, absent application of the factors in § 40-4-202, MCA. We hold that the court abused its discretion in including Jeff's inherited property in the marital estate. We reverse the District Court on this issue.

## ISSUE 5

Did the District Court err when it awarded Lisa $1250 in monthly maintenance in addition to $500,000 in cash?

For the reasons set forth in our holding in Issue 4, we reverse the District Court's award of a $500,000 cash settlement and remand on the issue of monthly maintenance for a determination

9

by the court on whether Lisa is entitled to maintenance, and if she is, what is reasonable maintenance under § 40-4-203, MCA.

## ISSUE 6

Did the District Court err when it awarded Lisa $1250 in monthly child support?

Lisa testified that the total monthly expenses for her and the child were $2500. The District Court found that Lisa was entitled to $1250 in monthly child support for the minor child. We agree with Jeff that the District Court is bound to determine an award of child support pursuant to the factors set forth in § 40-4-204, MCA, as well as the Uniform Child Support Guidelines. The record does not reveal the basis for the support obligation under the Guidelines or why application of the Guidelines would be unjust or inappropriate. We hold that the District Court erred when it awarded $1250 in monthly child support, and remand for a redetermination of child support in accord with § 40-4-204, MCA, and the Guidelines.

We reverse and remand on this issue.

## ISSUE 7

Did the District Court abuse its discretion when it ordered Jeff to pay Lisa's attorney fees?

In a dissolution proceeding, "[t]he court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party . . . ." Section 40-4-110, MCA. Recently, we have restated that the party receiving the award of attorney fees first must make

10

a showing of necessity. Marriage of Welch (1993), 257 Mont. 222, 228, 848 P.2d 500, 503. We reverse and remand on the issue of attorney fees for a determination of whether or not there is a necessity for the award of attorney fees.

We affirm in part, reverse in part, and remand for further proceedings in accordance with the provisions of this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
_____
Justices

Justice Fred J. Weber concurs and dissents as follows.

I dissent from the conclusions and holding in Issue 4 and concur in the balance of the issues in the majority opinion.

Under Issue 4, the issue is stated as Did the District Court err when it awarded Lisa $500,000 in cash? The majority held that the District Court should not have distributed to Lisa marital estate properties which Jeff received after the parties separated, absent application of the factors in § 40-4-202, MCA. The foundations for the holding of the Court are the following statements in the majority opinion:

> . . . The court cannot distribute to the non-acquiring spouse property acquired prior to the marriage or acquired by gift, bequest, devise, or descent when there is no evidence that the spouse made any contribution to those assets in any form.
> Therefore, we overrule that portion of Isaak that allows a district court to distribute inheritance property in the marital estate without strict application of the factors set out in § 40-4-202, MCA.

In substance the majority reached the conclusion that because the wife had not made any contribution to the specific asset received after separation, she was not entitled to receive a share of such assets. I disagree emphatically with that conclusion.

Following are the pertinent portions of § 40-4-202(1), MCA, underscoring the beginning portion which was not included in the majority opinion:

> Division of property. (1) <u>In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belongins to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.</u> . . . In dividing property acquired prior to the marriage: **property acquired by gift, bequest, devise, or**

12

descent: property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent: . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements. [Emphasis supplied.]

Section 40-4-202(1), MCA. The underscored portion states that the court shall "equitably apportion" between the parties the property belonging to either or both, however and whenever acquired and whether titled to either one or both. Clearly that portion of the statute affords no basis to suggest that property acquired by descent or devise after separation is not to be equitably apportioned between the parties.

In a similar manner, the following portion of § 40-4-202(1), MCA, requires the court to "consider those contributions of the other spouse to the marriage" and requires the court to consider the nonmonetary contributions of Lisa in this case, the extent to which such nonmonetary contributions have facilitated the maintenance of this property, and finally whether the property division serves as an alternative to maintenance. Of particular import is the requirement that the court consider the nonmonetary contribution of a homemaker. As above quoted, the majority has concluded that there could not be distributed to Lisa property acquired by Jeff by bequest, devise or descent where there is no evidence that Lisa made any contribution to those assets in any

13

form. That is a significant reduction from the broad requirements of the statute. Under the statute the court is required to consider Lisa's contribution "to the marriage" including the nonmonetary contribution on her part as a homemaker — those contributions to the marriage and as a homemaker may have nothing to do with contribution to the assets themselves but are still required by statute to be considered. In addition, the statute requires the court to consider whether the property division serves as an alternative to maintenance arrangements for Lisa. The majority has disregarded those other provisions of the statute.

The above quotation of the majority opinion stated the majority has overruled that portion of _Isaak_ that allows a district court to distribute inherited property without strict application of the factors set out in § 40-4-202, MCA. As I read _Isaak_ there is _no portion_ of _Isaak_ which allows the district court to distribute inherited property without strict application of § 40-4-202, MCA. In fact _Isaak_ states the following for the assistance of the District Court on remand:

> For the assistance of the District Court on remand, we emphasize it must be guided by the provisions of § 40-4-202, MCA. The requirement of the court is that it "finally, equitably apportion" the marital estate, and this extends to inherited property as well as other property. The statute requires the court to consider such items as duration of marriage, health, occupation, amount of income, and needs of the parties. The general provisions of subparagraph (1) also require that the court consider the relationship of apportionment to maintenance and the opportunity of each for future acquisitions of capital assets and income. As above quoted, the statute also provides that in dividing property acquired by devise or descent, the court shall consider the contributions of the other spouse to the marriage including:
> (a) the nonmonetary contribution of a homemaker;

14

(b) the extent to which such contributions have facilitated the maintenance of the property: and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA. We emphasize that the District Court should consider all appropriate provisions of § 40-4-202, MCA.

Isaak, 848 P.2d at 1017-18. As the reader will note, Isaak emphasizes that the district court should consider all appropriate provisions of § 40-4-202, MCA. As a result, I don't find a basis for overruling any portion of Isaak.

My particular concern is that the above quoted portion of the majority opinion appears to require that a spouse must have made contribution to the specific assets which constitute property acquired prior to marriage or acquired by gift, bequest, devise or descent--and if there has been no contribution to the specific assets, there can be no distribution to the spouse. I conclude that is in direct derogation of § 40-4-202 (1), MCA, and incidentally is prohibited under Isaak.

As I review the District Court's action in this case, I do not conclude that it abused its discretion in including Jeff's inherited property in the marital estate. I further conclude that there are a number of reasons set forth under which the District Court properly included that property, even in the absence of any direct contribution to the property by Lisa.

I dissent from the majority's holding on Issue 4.

_____
                    Justice

15

Chief Justice J. A. Turnage:

I join in the concurring and dissenting opinion of Justice Weber.

_____
Chief Justice

March 24, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Don C. St. Peter, Esq.
Linda Osorio St. Peter, Esq.
WORDEN, THANE & HAINES, P.C.
P.O. Box 4747
Missoula, MT 59806

Lori Ballmger
PAULETTE C. FERGUSON
210 N. Higgins, Suite 302
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy