No. 81-208

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN RE THE MARRIAGE OF
LOUIS M. KIS,

                    Petitioner and Appellant,

        vs.

MARGE M. KIS,

                    Respondent and Respondent.


Appeal from:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead
              Honorable James M. Salansky, Judge presiding.

Counsel of Record:

        For Appellant:

            Hash, Jellison, O'Brien & Bartlett, Kalispell, Montana
            Kenneth E. O'Brien argued, Kalispell, Montana

        For Respondent:

            Keller & Gilmer, Kalispell, Montana
            Brenda Gilmer argued and Robert Keller argued,
            Kalispell, Montana


                            Submitted:  December 1, 1981

                              Decided:  January 21, 1982

Filed: JAN 21 1982

_____
Thomas J. Kearney          Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Appellant, Louis M. Kis, appeals from the Findings of Fact and Conclusions of Law entered on January 8, 1981, and Judgment entered on January 15, 1981, by the District Court of the Eleventh Judicial District. This judgment distributed the real and personal property of the parties to this dissolution.

Louis and Marge Kis were married June 30, 1960. It was a second marriage for both. At the time of the marriage, Marge Kis had two children and Louis Kis had one child. No children were born to the marriage. All three children were emancipated when the dissolution proceedings were instituted.

At the time of the marriage, Louis Kis had been employed as a warden for the Montana Fish and Game Department for approximately six years. Marge Kis worked as a bookkeeper.

From 1960 to 1965, Louis was transferred several times, finally being permanently located in Kalispell, Montana. With joint proceeds, the parties purchased property on Foys Lake and constructed a home. They later purchased two additional lots on Foys Lake with joint proceeds.

During the marriage, both parties continued to work. Louis was promoted by the Fish and Game Department to Captain Warden in charge of the Northwest Montana District. At the time of trial, his salary was $19,400.00 per year. Additionally, he bought, sold and traded art, cameras, guns and photographs, thus earning approximately $3,000.00 per year.

Marge Kis was self-employed as a bookkeeper. In addition, she invested and speculated in the purchase of commercial property. At the time of trial, Marge Kis owned and maintained solely, and in partnership with other individuals, several

rental properties. Her annual income prior to trial had ranged from a low of $6,500.00 to a high of $13,500.00.

On June 4, 1976, Louis Kis filed a petition for dissolution of the marriage. Hearings in the matter were held, and on October 10, 1978, a partial decree was entered by the District Court dissolving the marriage and making an award of personal property, pursuant to an agreement reached by the parties. This agreement awarded Louis Kis personal property totaling $17,917.50 and Marge Kis property totaling $10,693.73.

Subsequently, on January 8, 1981, the District Court entered Findings of Fact and Conclusions of Law.

The District Court determined that Louis Kis was in good health and highly employable due to his law enforcement background and other income earning vocations. The court also found that Louis Kis had a vested right to his Game Warden retirement benefits and found that the cost of an annuity providing similar benefits was $118,833.00.

The District Court found Marge Kis to be in only fair health as a result of several operations and an impairment to her right arm. The court found that Marge's health affected her ability to repair and maintain her rental properties, as well as perform bookkeeping functions.

The District Court made specific findings regarding the values of the real properties owned by the parties and determined the liabilities owed by each. The court specifically found that each party's business and job interests were, for the most part, separate. Each party had maintained separate bank accounts. The District Court determined that although Louis Kis had co-signed several bank notes, such action was taken at the request of lending institutions. The court

found that at all times Marge Kis was in partnership with other individuals in her business transactions and Louis Kis was never a partner.

Based on its findings the District Court apportioned the marital property as follows:

> "A. The house and two lots on Foys Lake, 70% to the husband and 30% to the wife.
>
> "B. The Fish and Game Pension to the husband.
>
> "C. All the personal property as heretofore distributed in the Findings of Fact and by stipulation of the parties as therein set forth.
>
> "D. The Whitefish Arms Appartments to the wife.
>
> "E. Eastside Superette (parcel K) to the wife.
>
> "F. The Pfrimmer House (parcel L) to the wife.
>
> "G. Western Acres duplex (parcel G) to the wife.
>
> "H. The K.P.H. partnership to the wife.
>
> "I. Proceeds from the default duplex in Whitefish (parcel C) less the amount paid to Mr. O'Brien for Attorney's fees, to the wife.
>
> "J. Any other business properties to the wife."

A judgment in accordance with the above apportionment was entered on January 15, 1981.

Issues on appeal are:

(1) Whether the Game Warden retirement benefits are a marital asset?

(2) Whether the District Court erred in admitting evidence of the cost of an annuity to establish the present value of the Game Warden retirement benefits?

(3) Whether the District Court failed to determine the net worth of the marital estate?

-4-

(4) Whether the District Court's apportionment of the marital assets is supported by substantial evidence?

(5) Whether the District Court abused its discretion by ordering the Foys Lake residence and lots sold unless an agreement was reached between the parties?

Appellant, Louis Kis, first contends that his retirement benefits, stemming from his service with the Montana Fish and Game Department, should not be considered as a marital asset for dissolution purposes. Louis Kis relies mainly on the recent United States Supreme Court decision, McCarty v. McCarty (1981), ____ U.S. ____, 101 S.Ct. 2728, and also Montana statute, section 19-8-804, MCA.

In McCarty, the United States Supreme Court decided that military retirement benefits could not be considered community property to be divided equally in divorce proceedings. This decision was based primarily on the determination that California's community property laws conflicted with specific federal statutes regarding military retirement benefits. Therefore, federal law preempted the state statutes.

As the case before this Court does not involve a military retirement benefit, the McCarty decision is not controlling.

Section 19-8-805, MCA, relating to Game Warden retirement benefits, provides:

> "Any money received or to be paid as a member's annuity, state annuity, or return of deductions or the right of any of these shall be exempt from any state or municipal tax and from levy, sale, garnishment, attachment, or any other process whatsoever and shall be unassignable except as specifically provided in 19-8-806."

Louis Kis contends that this statute precludes inclusion of his retirement benefits as a marital asset. Mr. Kis asserts that such inclusion would violate the statutory exemption of retirement benefits from ". . . any other process whatsoever."

-5-

We cannot construe this exemption as extending to determinations of marital estates in dissolution proceedings. The purpose of this provision is to protect a person's future retirement security. Inclusion of such benefits for purposes of establishing a marital estate is mandated by section 40-4-202, MCA, which requires apportionment of all the property and assets of parties to a dissolution.

We hold that the District Court properly included the retirement benefits of Louis Kis as a marital asset of the parties.

The appellant next contends that even if the retirement benefits are a marital asset, the District Court improperly valued the retirement benefits by accepting evidence of the cost of an annuity to establish the present value of the benefits. The District Court accepted evidence establishing the cost of an annuity, purchased for a 51 year old male, yielding $10,000 per year from and after the 55th birthday. The cost was $118,833.00.

Louis Kis asserted at trial that his only assured retirement benefits were his contributions to the retirement fund. This assertion is premised upon the fact that Louis, at time of trial, was not yet 55 years of age and had not accumulated 25 years of service; therefore, his full retirement benefits were not assured. Evidence was introduced establishing that Louis Kis had contributed $14,436.00.

We hold that the District Court properly accepted the evidence of the cost of an annuity as establishing the present value of the Fish and Game retirement benefits. Present value is the proper test. Value might be affected by the contingency of the retirement benefits failing to reach the levels used by the court. At time of trial Louis

Kis had not reached 55 years of age (retirement age) and had not served the 25 years necessary for a retirement benefit equal to the sum projected by the testimony and adopted by the court. The possibility that Louis Kis would not reach 55 years of age and the possibility that he would not serve 25 years could properly be considered in arriving at value. However, no evidence was offered by Louis Kis showing what, if any, effect such a contingency would have in diminishing the present value figure offered by Marge Kis. The evidence offered by Marge Kis could properly provide a valid basis for the court's evaluation. Where substantial credible evidence supports a finding of the trial court, then that finding must be upheld. Rule 52(a), M.R.Civ.P.

Appellant, Louis Kis, contends that the District Court failed to determine the true net worth of the marital estate by failing to make specific findings of value regarding certain properties. Specifically, Louis Kis asserts that the court failed to place a value on the Foys Lake residence and lots, the pension benefits, and the K.P.H. partnership interest of Marge Kis. He further asserts that the court failed to find that Marge Kis had made a $20,000 loan to the K.P.H. partnership and was also entitled to $9,000 as a result of a default on a contract for deed.

A review of the record in this matter discloses that the District Court either had stipulated valuations at its disposal or made findings on the disputed properties. Conflicting evidence was presented on the existence of assets as well as the value of all assets. The District Court resolved these conflicts in determining the value of the marital estate and in making an apportionment. From the record we cannot say that the court's findings were clearly

-7-

erroneous, and therefore they must be affirmed. Rule 52(a), M.R.Civ.P.

Louis Kis contends that the District Court's apportionment was inequitable and unsupported by the record. This argument rests on his assertion that the retirement benefits were improperly overvalued and that marital assets were ignored by the District Court in establishing the marital estate. We have already disposed of these arguments and need not discuss them again.

Utilizing the stipulated values and the findings made by the District Court, the following apportionment figures are established.

Husband

Net Assets:

| | |
|---|---|
| Retirement security | $118,833.00 |
| 70% value of family home | 74,463.00 |
| 70% value of Foys Lake lots | 21,000.00 |
| Personal property | 17,917.50 |

$232,213.50

Liabilities:

| | |
|---|---|
| VISA | 1,000.00 |
| IRS (contingent) | 1,000.00 |
| Valley Bank note | 4,000.00 |

(6,000.00)

TOTAL NET TO HUSBAND $226,213.50

Wife

Net Assets:

| | | |
|---|---|---|
| Western Acres Duplex | $ 10,500.00 | |
| Eastside Superette | 3,833.00 | |
| Pfrimmer house | 19,664.00 | |
| Whitefish apartments | 142,559.00 | |
| 30% value of family home | 31,901.00 | |
| 30% value of Foys Lake lots | 9,000.00 | |
| First Federal Savings | 14,511.00 | plus accrued interest |
| Personal property | 14,365.73 | |
| KPH partnership | 26,156.12 | |

$272,489.85

-8-

Liabilities:

| | |
|---|---|
| First National Bank of Whitefish | 11,660.72 |
| First National Bank of Whitefish | 10,997.74 |
| First State Bank of Whitefish | 2,175.00 |
| First State Bank of Whitefish | 3,200.00 |
| Whitefish Credit Union | 10,000.00 |
| Harry Pifer, Sr. | 5,000.00 |
| Delila Pifer | 5,000.00 |
| Ross Linsennan | 5,600.00 |
| First Northwestern Bank | 4,500.00 |
| Legal fees (not involved in this action) | 9,700.00 |
| VISA | 1,359.00 |
| Master Charge | 829.00 |

(70,021.46)

TOTAL NET TO WIFE                                    $202,468.39

In reviewing divisions of marital property, this Court must determine only ". . . whether in the exercise of its discretion, the court acted arbitrarily, unreasonably, or without regard to recognized principles resulting in substantial injustice." Balsam v. Balsam (1979), ____ Mont. ____, 589 P.2d 652, 654, 36 St.Rep. 79, 82. Here the husband received an unusually large percentage of the marital estate. However, more than one-half of his assets result from the annuity valuation. We have held that the annuity valuation was proper. Therefore, the District Court acted within its discretion in apportioning the Kis marital estate. In fact the husband's award was generous.

Appellant's last issue on appeal concerns the following order made by the District Court:

> "a. That in the event that the Petitioner (Louis Kis) make arrangements to transfer 30% of the value of the house and two lots on Foys Lake to the Respondent (Marge Kis) within sixty days of this date, satisfactorily to her, then such house and two lots shall be sold at public sale, within sixty days thereafter, and the proceeds, after deducting the expenses of sale, shall be divided between the parties in the aforesaid proportion; that if the parties can agree on a private sale prior to that time, then it may be done; that either party may be the purchaser at the sale, whether it be public or private."

We have often stated that the District Court has broad discretion in ". . . devising methods to accomplish an equitable division of property." In re Marriage of Johnsrud (1977), 175 Mont. 117, 123, 572 P.2d 902, 905. Here the District Court foresaw problems arising from joint ownership and provided a reasonable alternative. We find no abuse of the court's discretion.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices